Gaston, Judge.
 

 The prisoner was convicted of murder in the Superior Court of Sampson; and from the judgment there rendered against him, has appealed to this court. He assigns for error, certain irregularities of proceeding, in regard to the forming of a jury; the overruling of valid challenges, taken by him to jurors; and the misdirection of the presiding judge, in his charge to the jury. It was our duty to consider of these alleged errors, with the attention due to the immense stake which the prisoner has in the result of our deliberations, and to the importance of all questions affecting the regularity and purity of the trial by jury. This duty has been performed; and lam directed by my brethren to declare the opinion to which our deliberations have conducted us. The first irregularity objected by the prisoner, is as to the mode pursued in the drawing of the jury. It appears upon the record, that when the jury was about to be formed, there were in attendance seventeen jurymen of the original venire, and thirty talesmen. The prisoner required that the names of all the jurors, as well the tales as the original, should be deposited in the box together ; but the court directed that those of the original venire should
 
 be
 
 first deposited and drawn ; and that the tales should not be resorted to, unless a full jury could not be constituted without them. The prisoner’s counsel has submitted this objection to us without argument. We have not, however, regarded it as waived, but have attentively examined it, and are satisfied that it cannot be supported. The mode of proceeding, observed in this case, we are warranted by our own expe
 
 *201
 
 rience and observation in saying, is that which has been generally, if not universally observed in this state many years back, in the trial of capital offences. It certainly was pursued in the case of
 
 The State
 
 v.
 
 Lamon, 3
 
 Hawks, 175, where after the jurors of the original panel were either challenged or accepted, the prisoner tendered his challenge to the array of the tales. It is not necessary to inquire whether a departure from it would be error, but we are convinced that its observance is not only not liable to objection, but is most in accordance with our statutory provisions on the subject of juries. Our laws provide, that the justices of each county court shall appoint a number of freeholders, not less than thirty, nor more than thirty-six, to serve as jurors at the ensuing term of the Superior Court of the county; that these freeholders, so appointed, shall be summoned by the sheriff; that of those returned as summoned, the first eighteen who may be drawn, shall constitute the grand jury, and “ the residue of the names in the box, shall be the names of those who shall serve as petit jurors for the said court.” They further provide, “ that if any of the county courts shall fail or neglect to nominate freeholders, to serve as jurors, as aforesaid, or the persons so nominated shall fail to attend, it shall be lawful for such Superior Court to order the sheriff to summon other freeholders of the bystanders, to serve as jurors; and the persons so summoned shall be held and deemed lawful jurors; provided that such bystanders who shall be so summoned, shall and may be every day discharged ; and the succeeding day, and so from day to day, during the continuance of the court, the sheriff shall summon of the bystanders
 
 so many as may he necessary.”
 
 It is apparent, then, that upon the petit jurors of the original venire, is imposed the general duty of trying all the issues, as well in criminal, as in civil causes, that may be submitted for trial during the term; and that the bystanders are to be called in to the performance of this duty, only upon a deficiency of the original panel, or where a necessity for resorting to bystanders shall occur.
 

 Although the case before us does not
 
 demand
 
 an opinion, whether the same mode of proceeding should be fol-’
 
 *202
 
 lowed, when a special writ of
 
 venire facias
 
 should have been issued, as provided by the act of 1830, c. 27, yet as it as a matter of great public expediency, that an uniform practice should be observed throughout the state; and,, as in the investigation of the present case, our attention has been drawn to the provisions of that act, we shall avail ourselves of the opportunity, to make known our views upon this question also. We consider the act of 1830, as owing its existence to the case of
 
 Lamon,
 
 already referred to. In that case, from an apprehension of great difficulties in procuring a sufficient number of jurors, free from exception, the presiding judge had issued an order to the sheriff of the county, antecedently to the day of trial, commanding him to summon seventy-fiveadditionaljurors. Theseattend-ed, and after the original panel had been exhausted, were called, and appeared as talesmen, when the prisoner challenged the array of talesmen — 1st. because the order issued was not to summon
 
 bystanders;
 
 2dly, because the order was issued on a day antecedently to that of the trial, and 3dly, because it was issued for an excessive number of jurors. The challenge was disallowed, the prisoner was convicted, and then he appealed to this court. It was here held that the challenge was rightfully overruled. Among other reasons for this( decision, the court stated, that as the persons summoned by the sheriff attended, the calling of them into court when so attending, was a sufficient summons of them as bystanders — but that “ whether the court could have' compelled their attendance under the special venire, was another consideration.” The preamble to this act, recites the very doubt so expressed, and the expediency and necessity that the Superior Courts should have power by special writs of
 
 venire facias
 
 to compel the attendance of a sufficient number of jurors on the trial of a person charged with a capital offence, and for that purpose the act proceeds to enact that whenever a judge of the Superior Court, shall deem it necessary to a fair and impartial trial of any person charged with a capital ' offence, he may issue to the sheriff of the county in which such court may be held, a special writ of
 
 venire facias,
 
 commanding him to summon such number of the free
 
 *203
 
 holders of said county, as the judge may deem sufficient to appear on a specified day of the term as jurors of said court; and that the jurors so summoned shall attend from day to day, until discharged by the court, under the same rules, regulations, and penalties, as are prescribed by law for other jurors. There, is nothing in the act which removes or interferes with the general duty incumbent on the jurors of the original venire. The object of the special venire is to provide auxiliaries in the performance of this duty, in a case of anticipated necessity; and it seems to us it will be construed most consistently with its object, by making use of the jurors thus specially summoned only in the event that their aid shall be actually needed. Though designated as “jurors of said court,” and bound to attend throughout the term, unless sooner discharged, they are so far in the nature of tales jurors as being provided to supply a deficiency of the original panel.
 

 ' Another alleged irregularity in the forming of the jury is insisted on by the counsel for the prisoner. Three of the jurors of the original panel on being drawn and tendered, were, on motion of the solicitor for the state, and after objection from the prisoner, set aside until the whole number were .'drawn and tendered; and then these three jurors were called back, and two of them challenged by the state, and one of them by the prisoner. Anciently in the country of our ancestors, the king might challenge peremptorily, as many as he thought fit of any jury returned to try any cause in which he was a party, on the mere suggestion that those challenged were not good for the king; but by the Statute 33rd Edward 1st, commonly called an ordinance for’inquests, it was enacted, that “ notwithstanding it be alleged by them that sue for the king that the jurors of these inquests, or some of them, be not indifferent for the king, yet such inquest shall
 
 not remain untaken
 
 for that cause; but if they that sue for the king, will challenge any of those jurors, they shall assign of their challenge a cause certain; and the truth of the said challenge shall be inquired of according to the course of the court.” Upon this statute a construction was put and settled, that although the king thenceforth
 
 *204
 
 could not challenge any jurors without cause, yet if he challenge a juror before a panel is perused, he need not show any cause of his challenge till the w’hole panel be gone through, and it appear that there will not be a full jury without the person so challenged ; and that if the defendant, in order to oblige the king to show cause, presently challenge all the others of the panel “
 
 touts pur availe,”
 
 the defendant shall be first put to show all his causes of challenge before the king need to show any. In consequence of this construction, it became an established usage on the prayer of the king’s counsel to direct a juror to stand aside until the panel be gone through ; and this usage has also prevailed in the courts of this state. In the case of the
 
 State
 
 v.
 
 Arthur, 2
 
 Dev. 217, it was recognized as a legitimate practice. By an act of our legislature passed in 1827, c. 10, it is enacted, that in all criminal cases of a capital nature, the prosecuting officer in behalf of the state shall havethe right of challenging four jurors peremptorily, provided that he make his election to challenge before the juror is tendered to the prisoner. It is admitted by the prisoner’s counsel that the concession of this privilege of peremptory challenges does not take away the right of the prosecuting officer to challenge for cause; nor the right to defer showing the cause of challenge until it can be seen whether a full jury may not be had without the person challenged. This admission is properly made, for whatever was the origin of the usage before referred to, it has been as uniformly observed since the act as before, and
 
 Arthur’s case,
 
 in which the legality of the practice was distinctly recognized, occurred after the passing of the act. But it is insisted, that when a juror is set aside on the prayer of the prosecuting officer, he is
 
 challenged
 
 by the state, and if good cause of challenge be not shown when the proper time arrives for assigning cause, such challenge must be regarded as a challenge without cause — a peremptory challenge. In support of this position it is contended that the prisoner may be subjected to inconvenience, unless the exception so taken and not supported, be considered a peremptory challenge — that the prisoner might have admitted a valid exception against the chai-
 
 *205
 
 lenged juror, and on such admission the juror would have been discharged from the panel ; but if the state can waive the exception, then there may be tendered to the prisoner as a juror, one really exceptionable, but against whom he may be unable to establish a sufficient cause of challenge ; and thus the prisoner may be driven to the alternative of accepting one whom he does not like, or of throwing away a peremptory challenge. Upon full consideration of this alleged irregularity, the court is of opinion that the .allegation is not well founded. We agree with the prisoner’s counsel, that, when on the prayer of the prosecuting officer, a juror is set aside until the close of the panel, this must be understood as a- challenge on the part of the state, for cause then' taken, but a deferring to show the cause until the panel be gone through. In the regular order of proceedings, challenges for cause precede peremptory challenges; and when the former have been taken and disallowed, the latter may or may not betaken, at the option of him who has the right of absolute exception. One of the reasons assigned for allowing peremptory challenges to the accused, is, that upon challenges for cause shown, if the reason assigned prove insufficient for setting aside the juror, perhaps the bare questioning of his indifference may sometimes provoke a resentment, and to prevent all bad consequences from this, the prisoner is still at liberty
 
 if he pleases
 
 pererhptorily to set him aside. When the legislature, for whaqthey deemed sufficient reason, conferred on the prosecuting officer the privilege of making a limited number of peremptory challenges, in addition to the pre-existing right of challenging for cause, they imposed no other restriction on the exercise of this privilege, than that it should be used, if used, before the prisoner should be called on to accept- or reject the juror so peremptorily challenged. As a challenge for cause, unsusiained when taken by the accused, cannot be converted into a peremptory challenge, against his will, we do not see how, or why, when taken on the part of the state, it shall have such operation against the will of the prosecuting officer.
 

 The reason of possible inconvenience to the prisoner,
 
 *206
 
 urged by his counsel, seems to us not to have the force attributed to it. What was there in the course of the pro-ceetjjng that put it out of his power to admit that there was good cause of exception to the jurors, who were challenged for cause by the state? If he did not choose to make the admission, although he himself desired to get rid of these jurors, but speculated in the inability of the state to show a valid exception, and the probability of thé state then resorting to a peremptory challenge, in all fairness he must abide by the consequences of that speculation. The legal rights of the state are not to be abridged, nor his increased, because of the result. It may not be amiss to remark, that the practice of permitting the prosecuting officer to defer showing his cause of challenge to the excepted jurymen, until the panel be gone through, must be exercised under the supervision of the court, who will restrain it if applied to an unreasonable number. On the trial of Horne Tooke for treason, as many as seven out of a panel of more than two hundred were thus removed to the end of the panel; and this was not deemed an unreasonable number; though in consequence of the very many persons excused, it was, in the end, likely to produce a serious inconvenience to the prisoner, which was only prevented by the honourable conduct of the attorney general. The third error assigned by the prisoner, the overruling of his challenges, is that on which his counsel mainly relies, for a reversal of the judgment — and which in his argument, he has ably and earnestly pressed upon us. The disallowance of a legal challenge, whereby the party taking the exception is compelled to accept as a juror, a person whom he had a right to reject, is a ground not properly for' a new trial, but for a
 
 venire de novo.
 
 It is the denial to him of the benefit of an imperative rule of law, which vitiates the verdict, and lays a good foundation for a writ of error. The challenge ought to be propounded in such a way as that it may be entered of record; and so that the opposite party may either deny the truth of the matter thereby alleged, or avoid the challenge by a counter-plea of nevv matter, or may demur to its sufficiency.
 
 King
 
 v.
 
 Edmonds,
 
 4 Barn. & Adol. 471; (6 Eng. C. Law
 
 *207
 
 Reps. 493.) If an issue of fact arise upon the challenge, either because of a denial of the matter of exception, or because of a counter-plea, this issue according to the ancient practice, was determined by triers, but according to the modern usage it may be, at least by the assent of parties, and is most conveniently, tried by the court, When the facts are ascertained, either by the triers or the court, or are admitted by demurrer, the sufficiency of the cause of challenge is a pure question of law, to be adjusted by the court. When the record simply sets forth the matter alleged, as eause of challenge, anda disallowance of the challenge by the court, the truth of the matter so averred, is understood as admitted; and the decision of the court substantially the same as though a formal demurrer had been entered. This will appear, we think, from the form of the record set forth in 3rd Woodson’s Lectures, 347, n. i., in the case of
 
 Heskett
 
 v.
 
 Braddock,
 
 reported 3rd Bur. 1847. Our inquiry then distinctly is, whether the cause assigned for these challenges of the prisoner, be in law a good exception against the persons so challenged. We very much regret, that on matter of such moment, the record does not show with
 
 precision,
 
 the cause of challenge assigned. We collect from it with sufficient certainty, that the persons drawn as jurors, were severally examined on oath, whether they had formed and expressed an opinion. It then states, that three jurymen who were drawn, answered to this interrogatory, that they had formed and expressed an opinion; whereupon “ the judge
 
 further
 
 inquired, if they thought the opinion thus expressed, was so fixed as to influence them in any way in making up their verdict ?” that they answered that they thought .not; but that they could pass impartially on the case, after hearing the evidence;” that thereupon “on being tendered, the prisoner challenged them
 
 for cause,
 
 which was overruled; and he then challenged them peremptorily.” The case further states, that the prisoner challenged thirty-two jurors peremptorily, besides the three above-mentioned; and afterwards on a juror’s being tendered, claimed the right to challenge him also without cause, which was refused by the court, because he had already
 
 *208
 
 challenged thirty-five peremptorily; and thereupon the person so last challenged, was sworn on the jury. In the interpretation of this record, we can affix to it no meaning of which it is not fairly susceptible, but whenever it will reasonably admit of more than one construction, we hold ourselves justified in adopting that which is most favoura-ble to the prisoner.
 

 
 *206
 
 The disal-lowance of a legal challenge, whereby the party taking the exception, is compelled to accept as a juror, a person whom he had a right to reject, is a ground, not properly for a new trial, but
 
 *207
 

 for
 
 a venire de novo. It is the denial to him of an imperative which vititates and lays a good of error,
 

 
 *208
 
 A question has been very much discussed at the bar, whether jurymen can be called upon to testify as to preconceived opinions expressed by them on the subject-matter to be tried, or must the objection to their indiffer-ency, founded upon such declared opinions, be proved by extrinsic evidence? The case before us may, we think, be determined without deciding this question; because we hold that however this may be, the fact of the declaration appears upon the record. But we will not pass- over the question, for it is certainly time that it should, if possible, be put to rest. It appears from
 
 Norris’s case,
 
 1 Hay. Rep. 429, which occurred in 1796, that the legality of this mode of examination was then unsettled. The two judges w'ho presided on that trial, differed in opinion respecting it. But for the last fifteen or twenty years, it has been without dispute, assumed to be legal, and prac-tised upon accordingly. We should have vast difficulty now, after this acquiescence of the bench, and the bar, and the community in its legality, to pronounce against it; and could not do so without a very clear conviction that it is forbidden by the law. In criminal cases, perhaps (for it is by no means certain,) the weight of English authority before our revolution, may have been against it. See
 
 Cook’s case,
 
 1 Salk. 153; 13 State Trials, 334. From a recent decision in the Court of King’s Bench,
 
 (Edmond’s case,
 
 before referred to,) it appears now to be settled, that it is not' to be allowed in criminal cases; but the reasons of that decision are not so satisfactory, as to convince us of its correctness.
 

 The reasons assigned, are, 1st, For that expressions of opinion used by a juryman are not a cause of challenge, unless they are to be referred to something of personal ill-will towards the party against whom the opinion has been
 
 *209
 
 expressed; and, 2dly, That it is a very dishonourable thing, for a man to express ill-will towards a person accused of a crime, in regard to the matter of his accusation; and the juryman is not to be sworn to prove his own dishonour. The position, that a juryman may not be challenged because of an opinion made up and declared on the very matter to be tried, unless such declaration can be referred to personal ill-will, seems to ns not well founded. It is certainly a good cause of challenge, that he hath rendered a former verdict against the party challenging, for the same matter, although it be reversed by writ of error, or after verdict the judgment hath been arrested. Co. Lit. 157, a. So, if the juryman hath given a former verdict upon the
 
 same matter,
 
 though between
 
 other parties.
 
 Co. Lit.
 
 ut supra.
 
 So it is a valid exception at common law, that he hath been one of the grand jury, who found the bill; for the statute of 25 Edw. 3d, ch. 3, is but declaratory, and in affirmance of the common law against certain irregular practices which had recently prevailed. 2 Haw. ch. 43, sect. 27. 2nd Reeve’s His. of the Common Law, 459, 460. So it is, if he has declared his opinion against the party, as an arbitrator. Bacon, Juries, E. 5, and E. 12. This we find in a case from the Year Book, 49 Edw.
 
 3,
 
 fo. 1, cited by the Chief Justice in
 
 Edmond’s Case, “
 
 it appeared, that some of the jurors were challenged,
 
 for that they had declared for the one party or the other beforehand,
 
 or given their verdict beforehand; and some, for that they were of counsel with the one party or the other, and of their fees; and the persons themselves were sworn to speak the truth when the challenge did not go to their reproof or shame; but those who were challenged for that they had
 
 taken
 
 of the party, or procured without taking, were not sworn on the
 
 voir dire
 
 to give evidence to the triers.” It seems then, indisputable, that the indifferency which the law requires is not a mere exemption from personal partiality or personal malevolence; for what presumption of such partiality or malevolence can be raised from the mere fact that the juryman hath been one of the grand jury, who found the bill of indictment, or of a jury who had given a former verdict on the same matter, or
 
 *210
 
 was an arbitrator who had awarded thereon ; or a person who had previously declared the rights thereof? The fair presumption in all such cases is, that the former finding or declaration was according to honest belief. The indif-ferency required by the law must be one of the judgment, as well as of the passions, such as enables the trier to find the facts truly, according to the evidence; therefore a mind not thus indifferent, but inclined against one or the other of the parties to the issue, whether from personal dislike, or a previous determination on the controversy, has to him an unfavourable disposition, or in the language of the olden times, an “ ill-will.” Thus Britton, speaking of the prisoner being permitted to challenge a juror, because he was one of the indictors, 'gives as a reason, because “ there was a presumption that all who indicted him still bore the same
 
 ill-will
 
 against him.” Nor is this conclusion removed by recurring to the ancient authorities referred to in
 
 Edmond’s Case,
 
 in which it was holden, that if a juryman hath said that he will find for the one party, or hath declared his opinion that another is guilty, and hath made such declarations from the knowledge he has of the matter, he is nevertheless in law indifferent. Knowledge is to be distinguished from opinion. Anciently, all facts in issue were primarily referred to • the personal knowledge of the inquest. Witnesses were called in, but to supply the want of this knowledge. Jurors, notwithstanding the testimony of witnesses, were at liberty to find the facts upon their own knowledge. So far, therefore, from it being the matter of exception to a juryman, that he had declared a fact from his personal knowledge of it, he was esteemed because of this knowledge but the better qualified for being one of the inquest. Knowing the truth, and determined to affirm it, he was indifferent to all but the truth; and it was
 
 this
 
 which was demanded at his hands. But it was not so of one who had prejudi-cated the matter upon the information of others : he was liable to the influence of this prejudication, however erroneous it might be; would enter on the trialrwith the unfavourable disposition to one of the parties to the issue, thereby created ; might find the verdict , required of him,
 
 *211
 
 not from actual knowledge, nor from the proofs, but in part, at least, from the bias of opinion; and therefore was properly considered as not being one of those, “ by whom,” in the language of the venire, “ the truth might best be known.”
 

 If we are correct in this understanding of what the law means by indifference, it will follow, that a juror may be examined as to opinions honestly formed and honestly expressed, manifesting a bias of judgment not referable to personal partiality or malevolence. There are unquestionably occasions upon which
 
 such
 
 opinions may be so made up and declared. Independently of those already mentioned, many must occur in the discharge of public duties, or the duties of friendship, and many even in ordinary social intercourse, to justify, and almost compel the avowal of such opinions, without any personal ill-will, or a desire to create prejudice, or an expectation that he who makes them known, or those to w’hom they are communicated, will have to sit in judgment upon the subject to which they refer. No doubt they are too often rashly formed, and improvidently expressed, but even in these cases, the error is in general attributable rather to the infirmity of human nature, than to wickedness of purpose. If, in fact, they have been, without necessity, made up and declared by one who has been called, or expects to be called, to aid in a judicial investigation of the subject; and still more, if they have been disseminated, with a view to influence the judgment of others, and to affect the result of such investigation ; then, indeed, they do involve dis-honour, and guilt; theri they have the tendency to poison the purity of jury trial at the fountain-head, merit the reprobation of every friend to the even-handed administration of justice, and may very properly be visited with severe legal penalties. No juryman ought to be required to testify against himself as to such misconduct. If the question proposed cannot be answered without exposing him to the peril of this disgrace and punishment, the law protects him, and he should be apprized that the law protects him, from making any answer thereto. But unless they will have this effect, the party challenging has a
 
 *212
 
 right to the truth, the means of ascertaining it, and a resort to any witnesses by whom it can be shown. To give the right to challenge against a juryman, because of his prejudication of the case, and to forbid an examination of the juryman, as to the fact of such prejudication, is, in a great majority of cases, to grant it in terms, and deny it in effect. All technical objections which go to shut out the truth, when justice requires it to be shown, are to be received with great strictness.
 

 The next question presented in the course of this inquiry is, whether the forming and expressing of an opinion, constitutes a good cause of challenge to a juryman ; and if so, whether it be a principal cause of challenge, or one to
 
 the
 
 favour only. Challenges for an indifferency are all in one sense because of favour,
 
 “propter affectum,”
 
 but they are distinguished by the law into two sorts; either those working a
 
 principal challenge
 
 for favour, or those
 
 inducing
 
 or
 
 concluding to the
 
 favour. These two sorts sometimes approach each other so closely, that it is difficult to draw the line between them; but in contemplation of law, a distinct line of discrimination does exist. The former are said to be, because of express favour, or favour apparent, and embrace all those matters, which, being shown or admitted, warrant the conclusion of
 
 law,
 
 without regard to the actual fact, that the person challenged is not indifferent. Thus if the person challenged, be of kindred to one of the parties, the law presumeth that he doth favour his kinsman. So if he hath before given a verdict
 
 on the same
 
 matter for one of the parties, or hath been an arbitrator thereon, at the nomination of one of the parties, and treated with him thereof; or if he be his servant, or his tenant, liable to his distress, the law itself
 
 sees
 
 unindifferency, and requires no triers to find it. Challenges to the favour, are where the matter shown, do not,
 
 per se,
 
 demonstrate unin-difference, apd therefore warrant it as a judgment of the law, but only excite a suspicion thereof, and leave it as a matter of
 
 fact,
 
 to be found or not found, by the triers, upon the evidence. They are so called, (we presume,) because of the form in which they appear, when specially drawn up. They always conclude with the averment,
 
 *213
 
 that the person challenged is favourable, “
 
 et essint favourable.”
 
 Rolle’s Abr. Trial, 649, pl.
 
 7.
 
 Trials per pais, 160,
 
 et seq.
 
 The causes of the latter are so numerous, that they have been termed by Lord ,Coke “infinite.” It seemeth to us, that an opinion, fully made up and expressed against either of the parties, on the subject-matter of the issue to be tried, whether in civil or criminal cases, is a good canse of principal challenge; but that an opinion imperfectly formed, or an opinion merely hypothetical, that is to say, founded on the supposition that facts are as they have been represented or assumed to be, do not constitute a cause of principal challenge, although they may be urged by way of challenge to the favour, which is to be allowed or disallowed, as the triers may find the
 
 fact
 
 of favour or indifferency. In coming to the former part of this conclusion, we rely upon elementary principles; on the most respectable adjudications of the courts of the United States, and of the several states of the union; and on the usages of our own Superior Courts, recognized heretofore in this court. In considering the question whether a juryman may be examined as to his expressed opinions, we have already stated the elementary principles, which lead also to the belief, that a prejudication of the matter in controversy, constitutes a valid exception. Unquestionably it does constitute such an exception, when it has been declared on oath; as on a former trial of the same cause, or of a cause involving the same matter, or by a grand juror finding the bill of indictment. It is acknowledged also as such, in many cases, when not .declared upon oath, but in the performance of a social duty; as for instance in the award of an arbitrator, indifferently chosen by the parties.
 

 The declaration on oath is a more solemn evidence of the care with which an opinion has been made up, and of the settled character of that opinion, than a declaration not upon oath; but after all, it is the fixedness of the opinion, and not the manner of its declaration, which constitutes the exception; and it by no means follows, that the strength or obstinacy of an opinion depends on the caution with which it has been formed. On the trial of
 
 *214
 
 Aaron Burr, it appears, that by consent of the prosecuting officers on the part of the government, and of the prisoner and his counsel, all exceptions to the members of the jury, whether in the nature of principal challenges, or challenges to the favour, were indiscriminately submitted to the judgment of the court; and it is not always certain when they were allowed as exceptions of the first or of the second kind : but this distinction seems to be recog-nised by the great judge who presided on that trial, that one who has made up his mind upon rumour, and so declared it, that the prisoner was guilty, is incompetent to decide upon the testimony in the case; while he on whose mind unfavourable impressions have been made by rumour, and has made known these impressions, may be received, or not, accordingly as those impressions were strong or weak, permanent or fleeting, and do or do not leave his mind free to decide upon the testimony. The deliberate opinion of guilt once declared, was deemed of itself a valid exception; and an opinion less determined became an exception or not, according to the effect produced by it and remaining at the time of trial. In .the answer of Judge Chase to the articles of impeachment against him, he lays down as a rule, that the Jaw presumes indifferency of every juryman, until the contrary appears; and that this presumption is not removed by general expressions of opinion as to the criminality of the act of which the party is accused; but he distinctly admits, that this presumption is repelled by the declaration of an opinion, that the party is guilty of the offence charged. In every state of the union, so far as we are informed, the declaration of a settled opinion against a prisoner is deemed a principal cause of challenge. We know that such is the law of Virginia. It appears to be the law also of South Carolina.
 
 State
 
 v.
 
 Baldwin,
 
 1 Cons. Rep. 289. It is the settled law of Connecticut. 2 Swift’s Sys. 232. It has. been authoritatively decided to be the law of New York.
 
 People
 
 v.
 
 Vermilyea,
 
 6 Cow. 555; and 7
 
 Ibid.,
 
 109. It has been acted upon as settled law, by the Superior Courts of our state, for the last twenty years, and is distinctly recognised as such in
 
 Lamon’s Case,
 
 before referred to. The language of the
 
 *215
 
 late Chief Justice Henderson in that case is,
 
 “
 
 It is undoubtedly good cause of challenge to one offered as a traverse juror, that he was one of the jurors who composed the coroner’s inquest, or of the grand jury which found the bill, for he hath both formed and expressed an opinion on the subject.” But it also seemeth to us, that those opinions, if they can be termed such, which have not been fully made up, or which do not amount to belief, but only to impressions in regard to the matter in controversy, do not constitute a cause of principal challenge. The law indeed requires, that the juryman should stand indifferent, as he stands unsworn, and therefore excludes from the jury-box as far as the infirmity of human nature and the imperfections of human institutions will permit, every bias, partiality or prejudice, which may prevent the verdict from being a finding of the truth upon the proofs. It knows that honest but weak men may confidently believe that they are governed by the evidence, when they are misled by their prepossessions. Aware of the difficulty with which the understanding emancipates itself from the thraldom of opinions once definitively formed and declared, it pronounces those unfit for the free examination of a controverted matter, who have thus prejudged it. But the law would do violence to the deductions which the observation and experience of every day furnish, if it held that every impression inducing assent for the moment to the existence of a supposed fact, disqualified the understanding from entering upon a grave inquiry into the actual existence of the fact with perfect freedom. Impressions short of full belief, opinions not definitively made up, or depending upon the supposition that matters shall turn out as they have been represented — all of these may throw impediments in the way of impartial deliberation, and furnish cause to suspect that the juror may lean more favourably to the one than to the other party in the issue, and therefore in all these cases the law, by means of a challenge
 
 to the favour
 
 authorises an inquiry, whether in truth they have produced this bias.
 

 It is denied on the part of the state, that the opinion of the challenged juryman was ever a fixed opinion. Assu
 
 *216
 
 redly there is some room for doubt on this point. The doubt is increased by our experience of what frequently occurs upon investigations like that set forth on this record. We know that jurymen often seek to excuse themselves upon the ground of their having expressed an opinion, when upon prosecuting the inquiry, it turns out, that they had not made up any fixed opinion.
 

 The answer of the challenged jurymen to the further inquiry proposed by the court, renders it quite probable that such was the case here. If it were so, then there was at least but a cause of challenge to the favour, and the judge, on becoming satisfied that what the persons challenged called an opinion, was not such in the legal meaning, and had left^no unfavourable bias on their minds, was perfectly correct in overruling the challenge. Much as we may suspect this to be the fact, we do not feel ourselves justified in acting upon it judicially. We can know of what occurred on the trial only by what the record states. We there see the opinion described as one
 
 formed
 
 and expressed, and without further explanation we must understand it to have been fully formed and gravely expressed. The subsequent explanation is not inconsistent with this understanding. It shows only that the jurymen challenged believed that this opinion, however fixed it might have been when declared, was not then so fixed as to prevent them from finding a verdict according to the evidence. This belief did not remove the exception. From a decided opinion declared, the law infers a bias, and the belief of the person so biased, that he can rise superior to its influence, does not repel the legal inference. Nor ought it; for it not unfrequently happens that those who are most confident in the ability of their understanding, to triumph over this obstacle in the way of its free exercise and of the ascertainment of truth, owe this confidence to their ignorance of the stubbornness of prejudice, and may be the least qualified for the discharge of this, to all persons and at all times, perilous undertaking. The distinction which we make is substantially the same with that taken in the case of the
 
 Commonwealth
 
 v.
 
 Ostander,
 
 lately determined in the general court of Virginia; a
 
 *217
 
 case which has been referred to by the counsel on both sides. It was there held, that he who has formed and expressed a decided opinion as to the guilt of a prisoner, is an incompetent juror, but he who has formed a hypothetical opinion only, if he can decide upon the evidence without being influenced by this impression, is an indifferent juror. It is in accordance too, with several cases decided in the Supreme Court of New York, which will be found ably commented upon in the case of
 
 Vermilyea
 
 heretofore referred to. But it is objected on the part of the state, that be the opinion of the challenged juryman absolute or hypothetical, fixed or indeterminate, there is nothing on the record to show
 
 what that opinion was.
 
 After the most deliberate consideration we are obliged to say, that this objection is insuperable. Before we can reverse the judgment because of error in overruling the challenges, it must appear that they were taken for sufficient cause. As no cause is
 
 distinctly
 
 assigned, by no fair intendment can we assume that any others were understood to be assigned, or were in fact assigned, than such as the record shows was known to the court who overruled the challenges. We do collect from the record, that the persons challenged had formed and expressed an opinion on the matter there to be tried — the guilt or innocence of the prisoner — b.ut we cannot collect whether that opinion affirmed his guilt or his innocence, for the record furnishes
 
 no
 
 information ¡that any inquiry was made into the character of that opinion as favourable to the state or to the prisoner.
 

 Several answers have been made to this objection, but none which are satisfactory. It is in the first place insisted, that the right of exception to a juryman because of unindiffereney, is not confined to the party against whom he is unfavourable. It is argued that every man has a right to an impartial jury. He may desire not merely an acquittal, but an acquittal which shall remove every taint from his name; and if he pleases, may object to the juryman tendered because he is favourable to
 
 him;
 
 and in illustration of the position, is cited the well known case, that if a party challenge a juror because he is
 
 *218
 
 related to the other party, the latter cannot counterplead. that he is related also, or more nearly to the challenger. This position seems to us clearly untenable. It is upheld by no analogous principle, warranted by no adjudged case, and opposed by positive authority. The object of the law is, indeed, an impartial trial, but it secures this object by definite means, wisely devised to effect it. It gives to each party the privilege of excepting to the array of the jury, if favourably made, and to every individual juryman who may be favourable to the other party. Such is the
 
 right
 
 of each party; and by the free and mutual exercise of this right, the end is
 
 'practically
 
 accomplished. It takes no cognizance of points and principles of honour, but is solely intent on administering justice, ascertaining the truth, and applying to it when ascertained, its known rules. As it sets aside jurors who are under a bias of partiality to find untruly, so it excludes witnesses who are under the bias of interest to testify untruly. But if the party against whom the witness has this interest will not except to his testimony, the witness must be received as competent. And if he to whom the partiality of the juror is opposed, will not except to him because of this partiality, the juror must be received as indifferent.
 
 Ml
 
 the precedents of challenges
 
 propter affectum,
 
 either to the array or to the polls, are for matter which either manifests or argues a prejudice against the party challenging. The practice where the sheriff is of kin to one of the parties, and therefore it is apprehended that a challenge may be taken to the array, if made by him, intimates the ■true principles of the law respecting such challenges. . If the sheriff be of kin to the plaintiff,
 
 in order to prevent delay,
 
 the plaintiff may allege the same, and pray process to the coroners, which he cannot have unless the defendant will confess the same; but if the defendant will not confess it, then the venire must issue to the sheriff, and the defendant shall not then be permitted to challenge for that cause; but on the part of the defendant, any such matter shall not be alleged, and process prayed to the coroners, because he can challenge the jury for that cause, and can therefore be at no prejudice. Co. Litt. 158. See also
 
 *219
 

 Kynaston
 
 v.
 
 Mayor of Shovesbury,
 
 Andrews, 85—104. It is also illustrated, we think, in the case of
 
 Leader
 
 v.
 
 Samwell,
 
 Cro. Jus. 551. There in an action of trespass for the taking of the plaintiff’s beasts, and detaining them until a fine of ten pounds was paid, the defendant justified under an assessment of the fine for repairs made by the sheriff in his court. After a verdict for the plaintiff, the defendant moved an arrest of judgment, because it appeared of record, that the
 
 venire facias
 
 had been awarded to the sheriff; and it being a thing which concerned the sheriff and his interest, it ought not to have been awarded to him, but to the coroners;
 
 “sed non allocatur;
 
 for being awarded to the sheriff when he was party(meaning no doubt in interest,) “ and not to the coroner, that is no exception for the sheriff, it being done for his advantage and favour; but peradventure the plaintiff might well have taken the exception.” An exception for unindiffer-ency in legal parlance, always means
 
 favour to the other party.
 
 Thus the statute of 33rd Edward 1st, already mentioned, speaks of challenges made on the part of the crown, “ because the jurors of those inquests, or some of them, be not
 
 indifferent for the king.”
 
 When a challenge
 
 propter affectum
 
 is made, the finding against it establishes only that he is not favourable to the other party, for Lord Coke lays it down, (Co. Lit. 158,) that if one be challenged by one party, if after he be tried indifferent, it is time enough for the other party to challenge him. Nor does the illustration urged on the part of the prisoner, conflict with these views. Any party has a perfect right to except — and it is in law a principal challenge, because of kindred between the juryman and the adverse party; and this right is not taken from him, because the other will not exercise a corresponding right of exception, which he has against the same person.
 

 It is then argued on the part of the prisoner, that as the challenge was taken by him, and because of a prejudication of the matter in controversy, it must be presumed that such prejudication was against the prisoner. We are not authorised to make such a presumption. The overruling of the challenges has been considered by us, as on a
 
 *220
 
 demurrer taken
 
 ore terms;
 
 but a demurrer never admits any facts but those which are sufficiently pleaded. We have gone far in finding upon the record, cause of challenge assigned, that the persons tendered had expressed an opinion upon the matter to be tried; but we should travel wholly out of it to find what was the opinion so expressed. If the law presumed in favour of the challenge, we might assume the fact as the prisoner wishes us to intend. But the presumption of law is the other way — it presumes what was done, rightfully done, until the contrary is shown. We must then take the fact to be, that' the prisoner claimed the right of exception,
 
 not
 
 because those challenged had prejudged the case against him, but simply because they had prejudged it. This will not do. We hold that a bias of the understanding, as well as an inclination of the affections, may give the parties a right of challenge; but in the one case as in the other, the right is
 
 his
 
 only against whom the leaning operates. It is therefore incumbent on him who challenges, to show its tendency to his prejudice. It was competent for the prisoner in this case, if he believed the fact warranted it, to assign for challenge, that the jurymen had determined the case against him; and if the fact were not admitted, to ascertain it by either an examination of the persons so challenged, or by the testimony of indifferent witnesses. And even then, if his suspicions turned out to be unfounded, he had-yet the pivilege of challenging them peremptorily. These were his legal rights — and here he stands upon these rights. He could not claim to set aside a person tendered to him as a juror, because such person had expressed an opinion on the case, and he
 
 feared
 
 that the opinion was against him. If he would
 
 act
 
 without further knowledge— he could only challenge peremptorily.
 

 It
 
 is then finally argued by the prisoner’s counsel, that the examination of the jurymen with respect to an expression of opinion, was made by the court before, and independently of any challenge taken by the prisoner: that it must have been made for the purpose of setting aside all who were liable to just exceptions upon an understanding express or implied, that both parties desired all such to be
 
 *221
 
 excluded : that the court erred in holding that the opinions expressed by the three jurymen afterwards challenged, did not furnish a valid exception ; and that this error appearing, it ought to be corrected by reversing the judgment. Neither will this ground avail the prisoner, and for this obvious reason, that the court forbearing to discharge a juror, to whom an exception has not been taken, if there be ascertained cause of challenge against him,
 
 can
 
 do no injury to either party. The privilege of exception is not in the slightest degree impaired thereby. If the court upon such previous examination, entertained a doubt on the subject of the juror’s competency, it was the safer course to cause him to be tendered, in order that exception, if any, might be taken. As this is the first fit occasion which has been here presented, for considering of the practice which has become so common in capital cases, of administering to every juryman what is called the preliminary question, whether he has formed and expressed an opinion as to the guilt or innocence of the prisoner; and as it is very important that the nature of this examination, and the legal consequences of it, should be well understood, we have deemed it our duty to state the views which we take, and the opinions which we entertain, upon the subject. Every court has, as we apprehend, the power of its own motion, to cause to be withdrawn from the jury, those whom it believes not qualified to discharge the duties required from jurors. It
 
 may,
 
 therefore, set aside jurymen, because they do not stand indifferent for the state or the prisoner, without an exception being taken ; but a necessity for the exercise of this power can scarcely be conceived, except when the prisoner is in effect, without counsel. As incidental to this power, it has also authority, either by an examination of the jurymen, or of any other witnesses, to ascertain the matters of fact, so as to enable it to exercise this power discreetly. But when the court is thus acting upon its own motion, for its own satisfaction, it does not adjudicate between the parties. Neither can assign for error, that one of the panel has been withdrawn by order of the court, without adequate cause; and each has the perfect right of challenging for
 
 *222
 
 sufficient cause, those whom the court may leave on the panel. It is also competent for every person who may be called upon to serve as a juror, to state any matter of exception or excuse which he may have with respect to performing the duty, and pray the court for his discharge. Upon the consideration of this prayer, the court can of course, examine the applicant upon oath; and at its discretion, may or may not discharge him. Neither party can assign for error, that discharge; and either may except to him, if not discharged; but except in the rare instances where the court deems it necessary of its own motion, to purify the panel — or where a juryman excepts to, or excuses himself — this examination of the jurors, as to their having formed and expressed an opinion, seems to us irregular, and out of place. The only regular way in which the validity of an exception to a juryman can be tried, is upon the challenge of one of the parties. The challenge made, and its cause assigned — as for example, that the person challenged has made up and declared an opinion, that the prisoner was guilty — the court then acts judicially upon it. If there be a dispute of fact, it may try the fact, unless one of the parties demands triers. Then testimony is regularly heard; and under the qualifications before stated, the jurymen challenged, may be themselves examined. Of the fact found either by the court or the triers, there is no review. If triers be appointed, and the court misdirect them in point of law, the alleged misdirection should be entered on the record — if on the fact found either By the court or by the triers, a judgment be rendered which is supposed to be erroneous; or if the court overrule the exception taken as on a demurrer, and the party challenging be dissatisfied therewith, he may pray that these matters be recorded; and they must be recorded. By pursuing this ancient and well defined mode of proceeding, every reasonable security is had for forming a proper inquest; and for correcting errors that may have happened in endeavouring to form it.
 

 The practice of indiscriminate inquiry into the indiffer-ency of the jurors, before any exception taken, can only be sustained upon the ground of consent, to which consent
 
 *223
 
 it no doubt owes its origin. If the counsel on both sides request that instead of the parties taking exceptions, and the court deciding upon them, the court will select from the panel such jurors as it may deem unexceptionable— the court can undertake the office, but it is not bound to do so. If it do undertake it, of course it must use the incidental means by examination of the jurors, or otherwise, to enable it to do right. |We should think, however, that before asking of the court to assume this trouble and responsibility, there should be an explicit waiver on both sides, of all the challenges except peremptory challenges.
 

 Ajudge in his charge to the jury ■ should not instruct them upon a statement purely hypothetical.
 

 The exception which was taken below to the charge of the judge, has been here with great candor abandoned. It is certainly unfounded. The only objection which might perhaps be made to the charge, is one of a very different kind — for that a part of it, and a part of which the prisoner cannot complain, was superfluous. It instructs the jury, that if the deceased were killed, when in the act of taking, or apparently taking part in the common fight against the prisoner, the crime of the prisoner was but manslaughter. It may be questioned whether there was
 
 any
 
 evidence, relevant to raise the supposition of such a case; and no instruction should be given on a purely hypothetical statement. It is difficult indeed to conceive of a stronger and plainer case of murder than this appears to be on the testimony. The prisoner had knocked down with a swingletree a defenceless man; and on being deprived of this weapon, had seized a large stick of wood, with which he was about to repeat the blow. He -was then engaged in a most wicked act, not unlikely to terminate in murder. It was the duty of every bystander to interpose, and stop this career of violence. The deceased at this moment came up towards the parties, when the prisoner instantly turned from the first contemplated victim of his vengeance, advanced, and without a word of warning, plunged a knife into him, and killed him. We can discover no provocation on the part of the deceased, to change the character which the iaw impresses on the fatal deed, the character of wilful murder.
 

 
 *224
 
 The Court is of opinion, that there is no error in the judgment below. This decision must be certified to the Superior Court of Sampson, with instructions to proceed to sentence agreeably thereto, and to the laws of the state..
 

 Per Curiam. Judgment affirmed.